UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ST. VINCENT MEDICAL GROUP, INC. d/b/a ASCENSION MEDICAL GROUP - INDIANA,<br><br>             Plaintiff,<br><br>             v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>             Defendant. | No. 1:22-mc-00011-JPH-MG |

**SEALED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Ascension Medical Group wants to take the depositions of a Drug Enforcement Administration Investigator and an Assistant United States Attorney in connection with a civil lawsuit pending in an Indiana state court. The Department of Justice responds that it considered and denied Ascension's request under the applicable federal regulations and there is no basis for the Court to override the DOJ's decision. The parties have filed cross-motions for summary judgment. For the reasons that follow, Ascension's motion is **DENIED**, dkt. [15], and the Department of Justice's motion is **GRANTED**, dkt. [17].[1]

---

[1] The Court dockets this order under seal because it references materials filed under seal by the DOJ, dkt. 19-1. The parties have until **November 17, 2022** to file a joint statement regarding whether any portion of this order should be redacted before publication on the public docket, along with a version of the order with the proposed redactions. *See* S.D. Ind. L.R. 5-11(c).

# I.
# Facts and Background

In May 2020, while employed by Ascension, Dr. Timothy Story received a subpoena from the DEA seeking medical records for certain patients. Dkt. 16 at 4.[2]

Over the next few months, DEA Diversion Investigator Andrew Ratcliff and Assistant United States Attorney Brad Blackington communicated with Dr. Story and his counsel regarding the subpoena. Dkt. 18 at 5. Most of the communications were with Mr. Blackington. *Id.*; dkt. 19-1 at 10, 40 (Deposition transcript of Dr. Story's former counsel).[3] Dr. Story and his clinics later received and responded to grand jury subpoenas. *Id.* Around the same time, Ascension received subpoenas for certain records and learned that Dr. Story had responded to the DEA subpoena. Dkt. 16 at 4; dkt. 17-2 at 1. Ascension fired Dr. Story in August 2020, and he later sued Ascension in Hamilton County Circuit Court for tortious interference and breach of his employment contract. *Id.* at 4–5.

A focal point of the Hamilton County lawsuit is whether Mr. Ratcliff or Mr. Blackington told Dr. Story that he was either the subject or target of a federal investigation. *See* dkt. 17-5 at 2. Ascension argues that this fact is

---

[2] These background facts are undisputed and taken from the parties' briefing.

[3] This exhibit was filed under seal.

material to the litigation. Dkt. 16 at 17.[4] Ascension also interprets a letter that Dr. Story produced in the state court discovery as proving this fact. Dkt. 16 at 19; dkt. 24 at 16.

In connection with that suit, Ascension sought to depose both Mr. Ratcliff and Mr. Blackington about several topics, including:

- Their communications directly with Dr. Story;

- Their communications directly with Dr. Story's counsel, including concerning Dr. Story's response to the DEA document subpoena, Mr. Blackington's discussions with Barnes & Thornburg concerning a potential conflict of interest in their representation of Dr. Story, and the discussions about conducting an interview of Dr. Story; and

- Their communications directly with AMG personnel, including with respect to the various subpoenas served on Dr. Story and AMG and the interviews of AMG personnel.

Dkt. 17-2 at 2. Ascension informed the DOJ that it would not inquire into "any proceedings before any grand jury" or internal DOJ communications. *Id.* The DOJ denied Ascension's request after considering it under the DOJ's *Touhy* regulations. Dkt. 17-3; 28 C.F.R. § 16.21–16.28; *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 470 (1951).

The DOJ informed Ascension that it "processed the request in accordance with 28 C.F.R. § 16.21–16.28" and concluded that Mr. Ratcliff only "had several short conversations with Dr. Story's office assistant and Dr. Story

---

[4] On September 28, 2022, Ascension informed the Court that its motion for summary judgment on Dr. Story's breach of contract claim was denied, so this case is not mooted. Dkt. 26.

3

related to service of the DEA administrative subpoena," after which Mr. Blackington and Dr. Story's counsel took over the communications; he therefore possessed no information relevant to the topics that Ascension sought to ask him about. Dkt. 17-3 at 1. With respect to Mr. Blackington, the DOJ said that Ascension's request:

> (1) violated the "grand jury secrecy rule," codified at Fed. R. Crim. P. 6(e);
>
> (2) implicated the privacy rights of individuals who may have been part of a criminal investigation but were not charged with any crime; and
>
> (3) would probe "AUSA Blackington's mental impressions or opinions about prosecution or investigatory decisions [which is] barred by the work product doctrine and law enforcement investigatory privilege."

Dkt. 17-3 at 1–2. The DOJ further noted that the relevant communications could be obtained from non-privileged sources such as Dr. Story, his present and former counsel, and Ascension's own records and employees. *Id.* at 2. Ascension renewed its request and the DOJ denied it for the same reasons. *See* dkt. 17-4.[5]

Ascension then brought this suit under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, asking this Court to review the "denial of [Ascension]'s discovery request" because it is a "final agency action for which there is no other adequate remedy in a court." Dkt. 1 at 3 (quoting 5 U.S.C. §

---

[5] Although the DOJ originally interpreted the request as seeking documents in addition to testimony, Ascension has clarified that it seeks testimony only. Dkt. 25 at 1.

704).  Both Ascension and the DOJ have moved for summary judgment.  Dkts. 15, 17.

## II.
## Applicable Law

The parties dispute the applicable standard of review.  Ascension argues that this Court should review the DOJ's denial of Ascension's request under Federal Rules of Civil Procedure 26 and 45 because "the issue at hand is simply a non-party's refusal to appear for depositions."  Dkt. 16 at 9-11.  The DOJ argues that the Court must review the denial of Ascension's request under the deferential APA standard.  Dkt. 18 at 8–9.

The Court concludes that the APA framework applies here.  Ascension argues that there is uncertainty regarding the applicable standard of review for evaluating a federal agency's decision to not comply with a non-party subpoena or request for information.  Dkt. 16 at 8–10.  But in the cases cited by Ascension, the plaintiffs sought information from federal agencies in the context of federal litigation.  *See Donald v. Outlaw,* No. 2:17-cv-32-TLS-JPK, 2020 WL 2899689 at *7 (N.D. Ind. June 2, 2020) (where the plaintiff brought a § 1983 suit in federal court); *Taylor v. Gilbert,* No. 2:15-cv-00348-JMS-MJD, 2018 WL 1334935 at *2 (S.D. Ind. Mar. 15, 2018) (where a federal prisoner asserted *Bivens* Eighth Amendment violations in federal court).  That's not the case here where the underlying litigation is in state court and no federal agency is a party to the litigation.  This is an important procedural distinction because "a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is to bring an APA claim—necessarily governed by

5

the APA arbitrary and capricious standard—against the agency in federal court." *Watts v. SEC*, 482 F.3d 501, 508 n.1 (D.C. Cir. 2007). That's essentially what happened here.

After the DOJ refused to comply with Ascension's request to take the depositions of Mr. Ratcliff and Mr. Blackington, Ascension exercised "the sole remedy" available and "file[d] a collateral action in federal court under the APA." *Houston Business Journal, Inc. v. Off. of the Comptroller*, 86 F.3d 1208, 1211–12 (D.C. Cir. 1996); dkt. 1 at 2 ¶ 4 ("[T]he appropriate means to challenge a federal entity's denial of discovery in related state court litigation is to challenge the denial by filing a separate action under the APA in the federal district court encompassing the location of the dispute.").

Moreover, reviewing the DOJ's decision under the APA is consistent with the approach taken by the Seventh Circuit in *Edwards v. DOJ*, 43 F.3d 312, 315–16 (7th Cir. 1995). There, the plaintiff obtained a state court subpoena and order compelling the DOJ to produce information related to civil proceedings. *Edwards*, 43 F.3d at 314. The DOJ removed the case to federal court arguing that the state court lacked jurisdiction to enforce the order against it and that the plaintiff could only seek to obtain the information through an APA suit in federal court. *Id.* While the parties in *Edwards* agreed that the APA applied, the Seventh Circuit observed that when a state court litigant seeks judicial review of a federal agency's decision to not comply with a state-court subpoena, (1) "the action to be reviewed has to be an APA claim directed at the agency, the United States, or the employee thereof"; (2) "the

6

review action must be in federal court pursuant to 5 U.S.C. § 702, rather than in a state court that lacks jurisdiction"; and (3) "the government must not have waived its sovereign immunity." *Id.* at 316; *see Walsh v. Kempfer*, 2022 WL 2176314, at *3 n.2 (S.D. Ill. Jun. 16, 2022) ("*Edwards* is distinguishable" from cases like *Donald* "because it originated in state court . . . .").

The Court reviews the DOJ's denial of Ascension's request under the APA, which limits a court's authority to reverse only agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, the Court may find the DOJ's decision invalid "[o]nly if the agency relied on factors that Congress did not intend it to consider, failed to consider an important aspect of the problem, or failed to articulate a satisfactory connection between the facts found and the choice made . . . ." *Dubnow v. McDonough*, 30 F.4th 603, 610 (7th Cir. 2022) (citing *Sierra Club v. EPA*, 774 F.3d 383, 393 (7th Cir. 2014)). "Under this highly deferential standard, an administrative decision should be upheld 'as long as the agency's path may be reasonably discerned.'" *Sierra Club*, 774 F.3d at 393 (quoting *Mt. Sinai Hosp. Med. Ctr. v. Shalala,* 196 F.3d 703, 708 (7th Cir. 1999)).

### III.
### Analysis

#### A.  The DOJ's *Touhy* regulations

*Touhy* regulations are developed by federal agencies to provide a method for determining whether and how to respond to subpoenas or other requests for

information. *Edwards*, 43 F.3d at 316 (discussing that *Touhy* embodies the common law rule that "a federal employee cannot be compelled to obey a subpoena, even a federal subpoena, that acts against valid agency regulations.").

The DOJ's *Touhy* regulations provide in relevant part:

>   (a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:
>
>     (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>     (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.
>
>   (b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:
>
>     (1) Disclosure would violate a statute, . . . or a rule of procedure, such as the grand jury secrecy rule, Fed. R. Crim. P., Rule 6(e),
>         * * *
>     (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.

28 C.F.R. § 16.26(a)-(b).

### B. DOJ's denial of the deposition requests

Although Ascension originally outlined broad topics for the proposed depositions, *supra* at p. 3, it has been clear since its initial request that the purpose of deposing Mr. Blackington or Mr. Ratcliff is to determine if they told Dr. Story that he was the subject or target of a federal criminal investigation.

8

*See* dkt. 17-2 at 2 (Oct. 2021 request to DOJ, explaining that Ascension "understood from information supplied by Mr. Blackington and Mr. Ratcliff that Dr. Story, himself, was a person of some interest to that investigation."); dkt. 24 at 16 ("the heart of the state court matter is whether Dr. Story knew he was a subject of the government's investigation in August 2020."). Ascension argues that it needs their testimony to avoid or minimize hearsay challenges in the state court litigation. Dkt. 16 at 20. The DOJ argues that its denial must be upheld under the APA's highly deferential standard because Ascension's need for the testimony is minimal and is outweighed by the law enforcement concerns that the request implicates. Dkt. 18 at 9–18.

As the party contesting the agency action, Ascension bears the burden of proof to show that the DOJ's decision was arbitrary and capricious. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995). On review, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the agency." *Dubnow*, 30 F.4th at 610 (citations omitted). "Still, the agency must provide a 'logical bridge' between the evidence and its conclusion." *Id.* "A reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (citations omitted).

### 1. Assistant United States Attorney Blackington

The DOJ denied Ascension's request to depose Mr. Blackington on the bases of grand jury secrecy, dkt. 18 at 9 (after July 2020 "the remaining

9

communications among the USAO, Dr. Story, and Ascension employees occurred in response to and in compliance with federal grand jury subpoenas"), and the law enforcement investigatory privilege, dkt. 18 at 12 ("[a]ll of the requested information is also protected under the law enforcement investigative privilege"), among other reasons, *see* dkts. 17-3, 17-4.

The DOJ explains that its *Touhy* regulations embody investigatory privilege by providing that: "disclosure will not be made by any Department official . . . with respect to which . . . (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." Dkt. 18 at 12 (quoting 28 C.F.R. § 16.26(b)(5)).

The privilege's purpose is broad—"to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 563 (S.D. Ind. 2004); *Miller v. Mehltretter*, 478 F. Supp. 2d 415, 431 (W.D.N.Y 2007) (disclosure would be barred if the requested testimony "would reveal the nature and scope of a federal investigation."). "The law enforcement investigatory privilege is not absolute" and may be "overridden in appropriate cases by the need for the privileged materials." *Dellwood Farms, Inc. v. Cargill Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). The court must

exercise its discretion in balancing "the need of the litigant who is seeking privileged investigative materials—against the harm to the government if the privilege is lifted."  *Id.*  But that balancing is subject to a "pretty strong presumption against lifting the privilege."  *Id.*

Here, the DOJ argues that the information sought by Ascension is protected by the investigatory privilege and revealing it would cause harm to the government: it would make citizens more hesitant to provide information during federal investigations; could affect the privacy rights of third parties who may have been associated with the investigation; and seeks Mr. Blackington's interpretation of a letter, thereby implicating the work product doctrine.  Dkt. 18 at 12–15; dkt. 25 at 6–8.  Moreover, the DOJ contends that Ascension's need is minimal because it already has access to the relevant information through alternative means.  *Id.*

Ascension argues that investigatory privilege applies only to "records"; that the privilege was waived when Dr. Story and Ascension put the fact of the investigation at issue in the state court litigation; and that its interests outweigh the DOJ's.  Dkt. 24 at 10–17.  None of these arguments show that the DOJ's denial of Ascension's request to make Mr. Blackington available for a deposition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

First, Ascension argues that the "investigatory privilege" portion of the DOJ's *Touhy* regulations applies only to "records" which are not implicated by its request.  Dkt. 24 at 10 (citing 28 C.F.R. § 16.26(b)(5)).  The DOJ responds

11

that the information Ascension seeks falls within the rule because it "relates to the USAO's execution of its law enforcement role and was created, obtained, or learned through a federal law enforcement investigation."  Dkt. 18 at 12.[6]

While cases dealing with investigatory privilege often consider the propriety of ordering disclosure of investigative documents or files, *see e.g., Anderson*, 220 F.R.D. at 563, the DOJ's grounds for denial are tied to the regulation and are consistent with the purposes of the rule.  It was therefore reasonable for the DOJ to conclude that the request to depose Mr. Blackington about whether Dr. Story was told he was the subject of a federal criminal investigation implicated the privacy concerns of Dr. Story and others who have not been charged with a federal crime, would affect the AUSA's ability to maintain the privacy of its own investigations, and would potentially reveal information contained in its investigatory records.  The Court may not "substitute [its] judgment for that of the agency."  *Dubnow*, 30 F.4th at 610.

Second, the investigatory privilege belongs to the DOJ, not to Dr. Story or Ascension.  *See Dellwood*, 128 F.3d at 1126–28 (discussing waiver of the investigative privilege); dkt. 25 at 1.  Therefore, Dr. Story and Ascension cannot waive the privilege by putting the investigation at issue in the state court litigation.

---

[6] Neither party addressed the issue of whether the DOJ's interpretation of its *Touhy* regulations is entitled to deference under the *Auer* doctrine, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2424 (2019), so the Court does not reach that question.  *United States ex rel Proctor v. Safeway Inc.*, 30 F.4th 649, 662 n.19 (7th Cir. 2022) ("Without briefing on this issue, we decline to say whether *Auer* deference should apply here.").

12

Finally, Ascension's argument that its inability to depose Mr. Blackington will "prejudice the jury in the state court litigation" does not tip the balance of interests in its favor. Dkt. 24 at 15–17. Through litigation, Ascension has obtained testimony of Dr. Story, his former counsel, and its own employees about their communications with Mr. Blackington, dkt. 16 at 2, 18–19, and a letter relating to whether Dr. Story was told that he was the subject or target of a federal criminal investigation, *id.* at 19; dkt. 24 at 16. Its only purported need for testimony from Mr. Blackington is to avoid or minimize hearsay objections that may be raised to bar admission of that other evidence and for Mr. Blackington to provide testimony about the letter's meaning. Dkt. 16 at 20; dkt. 24 at 16. In short, Ascension has not demonstrated sufficient need for Mr. Blackington's testimony to overcome the "pretty strong presumption against lifting the privilege." *Dellwood*, 128 F.3d at 1125.

Having found a "logical bridge" between the evidence and the DOJ's denial of Ascension's request to depose Mr. Blackington, the Court will not disturb the DOJ's decision, *Dubnow*, 30 F.4th at 610, or address whether grand jury secrecy is a basis to uphold the DOJ's decision. *See Communications Workers of America, Local 5008 v. N.L.R.B.*, 784 F.2d 847, 851 (7th Cir. 1986) ("If an agency states two grounds of decision, each sufficient, a court should sustain the decision if either reason is correct."); *see also AES Sparrows Point LNG v. Wilson*, 589 F.3d 721, 730 (4th Cir. 2009); *Syracuse Peace Council v. F.C.C.*, 867 F.2d 654, 657 (D.C. Cir. 1989).

**2. DEA Investigator Ratcliff**

The DOJ invokes both the law enforcement investigatory privilege and grand jury secrecy concerns as reasons for denying Ascension's request under its *Touhy* regulations. Dkt. 18 at 9, 12. The DOJ does not further elaborate upon these points as they specifically relate to its decision regarding Mr. Ratcliff, but explains that it determined through investigation that Mr. Ratcliff does not have responsive information. Dkt. 17-3; dkt. 17-4; dkt. 18 at 3. Moreover, the testimony of Dr. Story's former counsel has corroborated what the DOJ told Ascension. Dkt. 19-1 at 10, 40. Although not tied directly to the enumerated factors set forth in the *Touhy* regulations, the DOJ has provided a logical bridge between the evidence—Mr. Ratcliff possesses no responsive information—and the conclusion—he should not, therefore, be taken away from other agency duties to provide testimony is this civil matter to which the DOJ is not a party. *See COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."). There is no basis for the Court to conclude that the DOJ's denial of Ascension's request with respect to Mr. Ratcliff was "arbitrary, capricious, or contrary to law." 5 U.S.C. § 706(2)(A).

*   *   *

Under the APA's deferential standard, the Court "will disturb an agency's determination only if it lacks a 'rational basis.'" *Dubnow*, 30 F.4th at 619. Because the DOJ's "path" to denying Ascension's request with respect to both

Mr. Blackington and Mr. Ratcliff can be "reasonably discerned", *id.*, its denial of Ascension's request was not arbitrary and capricious.

## IV.
## Conclusion

Therefore, Ascension's motion for summary judgment is **DENIED**, dkt. [15], and the DOJ's motion is **GRANTED**, dkt. [17].

Final judgment consistent with this order shall issue by separate entry.

**SO ORDERED.**

Date: 10/27/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Tyler John Moorhead
BOSE MCKINNEY & EVANS LLP
tmoorhead@boselaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov